Mario Pittoni, J.
In this proceeding pursuant to article 78 of the CPLR judgment is granted in favor of the petitioners annulling the determination of the respondent board and directing the issuance of the permit requested.
The petitioners are owners of premises known as Lots 106, 113 through 116, Block 199, Section 21 on the Land and Tax Map of the County of Nassau. The property is on the west side of Glen Cove Avenue, 300 feet south of Morris Avenue in the City of Glen Cove. It is in a B-2 (Peripheral Commercial District) zone under the Glen 'Cove Building Zone Ordinance. According to section 24-87 (subd. [C] [2]) a motor vehicle filling station is a specially permitted use at the discretion of the Board of Appeals. To guide the board in the exercise of *316 that discretion the ordinance in section 24-96 (snbd. [C] [1]) states the facts which the board should find before issuing the permit. Section 24-96 (subd. [C] [1]) reads as follows: “ (1) Motor vehicle filling stations, provided board finds that the area lacks such facilities or is inadequately served by existing facilities, that proposed station is in the public interest, will not create undue fire or traffic hazards, impair character of neighborhood or adversely affect property values, and that the layout and design of station is reasonably in keeping with character of neighboring structures, thus tending to promote the stability of the area and taxes therefrom. Such filling station shall not be within 200 feet of the entrance of any church, hospital, public library, public or duly licensed private school, nor shall any part of the building or equipment or pump be within 25 feet of the boundary line of any residence district nor within 20 feet of any street or building line.”
The petitioners’ application for a permit to.use the subject property for a motor vehicle filling station was submitted to four of the five members forming the Board of Appeals (one member being absent) and by a vote of two in favor and two opposed the application was denied. Under the zoning ordinance (§ 24-22) and under the General City Law (§ 81, subd. 1) a concurring vote of four is necessary for the issuance of a special exception permit. The sole reason for the rejection was expressed in the following “Findings” of the decision rendered on July 12, 1967: “Area is adequately servéd by existing facilities in that there are at least seven presently operating motor vehicle filling stations within an approximate half-mile radius of the proposed station, which are sufficient for the area. An additional service station existing within 1000 feet of the proposed station ceased operation within the past six months. ’ ’
In view of the respondents’ failure to make other findings •in its decision, and its failure to deny in the answer paragraphs 13, 15, 16 of the petition it must be concluded (and such conclusion is supported by the testimony and exhibits) that the respondent impliedly found the proposed use to conform to the requirements of section 24-96 (subd. [C] [1]) in all other respects.
With respect to the reason stated for the rejection — lack of need in the area — the decision lacks factual findings to support the conclusion. It is stated that the ‘ ‘ area ’ ’ has seven existing filling stations. Does the word ‘ ‘ area ’ ’ cover the entire City of Glen Cove? And what is the basis for determining that those stations “ adequately serve ” the area? The *317 mere fact that some stations have closed in recent years or months is not sufficient in and of itself to establish lack of need. The petitioners’ proof was not contradicted as to the growth of the city within the last 15 years and to increase in the volume of traffic — yet during that time the number of filling stations has been reduced by six. If the conclusion was made at the time that those six stations were established that the area needed them, what is the basis for now concluding that the area does not need the petitioners’ station? The petitioners’ proof concerning the inadequacy in size, the unattractiveness in appearance, the lack of cleanliness of many of the stations which either closed or are still in operation was not contradicted. The proposed station of the petitioners would be well lighted; there would be no repair work, or service work done on automobiles; there would only be the sale of gasoline and oil to those motorists desiring such products at a competitive price; ample room for ingress and egress over a concrete or hardtop surface would be provided. There was no proof nor any statement made by the opposing two members of the board to show that any of the existing stations are equally attractive and free from sources of danger.
Aside from the fact that the two members of the respondent board have not supported their conclusion of lack of need by any facts another reason for directing the issuance of the permit exists. Subdivision 25 of section 20 of the General City Law empowered the City Council to adopt an ordinance regulating or restricting the location of trades and industries designed for specified uses but “ Such regulations shall be designed to promote the public health, safety and general welfare ’ ’. The Legislature did not empower the City Council to restrict uses on the basis of need. Therefore, when the City Council enacted section 24-96 (subd [C] [1]) it had no right to authorize the Board of Appeals to restrict a use on the basis of need alone. As stated in Green Point Sav. Bank v. Board of Zoning Appeals (281 N. Y. 534, 539) “ The question in each case is whether the establishment of a gasoline station in the particular place or in the particular way would imperil the safety of persons and property. Such dispensing power may properly be delegated to the municipal assembly which enacted the ordinance. (Fischer v. City of St. Louis, 194 U. S. 361.) ” In Matter of Cunningham v. Planning Board (157 N. Y. S. 2d 698, 702) it was written “ The basic economic law of supply and demand and open and fair competition should determine the number of gasoline filling stations * * * rather than the opinion of the members of the * * * board as to the *318 economic needs of the community, provided that none of the objectionable factors which are considered on all special applications is found to exist.” (Emphasis supplied; revd. on other grounds 4 A D 2d 313.) Here the board has found and the proof does show that the public will not be endangered by the proposed use. It would only be in the event the board found the use to be dangerous and detrimental to the public and to property values that the lack of need for the proposed use should be considered.
Accordingly it must be held that the' respondents were arbitrary or unreasonable in denying the permit requested.