John C. FISHER and Margaret Fisher,
his wife, Petitioners,

v.

Henry O. PILCHER et al., Respondents.

Superior Court of Delaware,
New Castle.

June 9, 1975.

William E. Wiggin, Richards, Layton & Finger, Wilmington, for petitioners.

Stanley William Balick, Balick & Hearn, P. A., Wilmington, for respondents.

## OPINION

O'HARA, Judge.

This is an appeal from a decision of the Board of Adjustment of New Castle County ("Board") granting a special exception to Donna Brown to operate a day care center for as many as twenty-eight children on her property.

The property in question, 1.04 acres in size, owned by Dennis and Donna Brown, is located on Ridge Road, approximately 472 feet northeast of Walnut Lane, in Holly Oak, Brandywine Hundred. It is zoned R–1–C, residential. Although the property fronts on Ridge Road, its access is via an eleven foot wide right of way leading to the Philadelphia Pike. The access is shared in common with petitioners John C. and Margaret Fisher. The Browns' residence is a two and one-half story frame and stucco house containing eleven or twelve rooms on the first and second floors. The proposed day care center would be operated within the home. Additionally, the Browns intend to designate a certain portion of the grounds as a play area for outside activities.

In order to obtain a special exception, pursuant to the New Castle County Zoning Code, the applicant must establish to the Board's satisfaction:

"(1) that a proposed use on a specific lot or parcel is reasonably necessary for the convenience and welfare of the public and (2) that the proposed use on the lot or parcel involved is not detrimental or injurious to the neighborhood or the county . . . ." New Castle County Code § 23–85.

Mrs. Brown petitioned the Board for the special exception on August 5, 1974. A hearing was held on September 12, 1974. At the hearing, the Browns, when confronted with questioning by petitioners' attorney, who is also a resident of the neighborhood where the Browns' property is situated, requested a continuance in order to procure counsel. The Board granted a continuance.

A second hearing was held on October 10, 1974. Mrs. Brown testified, essentially, that she desired to establish a small day care center operated in a home environment, as opposed to the larger institutional-type centers which, in her estimation, were predominately available. She stated that her son had attended two day care centers in the area and that both were overcrowded, necessitating the use of waiting lists for new patrons. She furnished the Board with the names and addresses of parents who had made commitments to place their children, sixteen in all, under her care when and if the center commenced operating. Mrs. Brown testified further that she had hired a teacher to establish a nursery program for the children. That individual, who was present at the hearing but did not testify, furnished the Board with a prepared written statement embellishing upon the advantages of a day care center conducted in a home environment.

Mr. Brown testified that the proposed play area would be located approximately 150 feet from the nearest neighboring home. He further stated that this area would be fenced in and located in the back

portion of the property, adjacent to a vacant lot. Mr. Brown also testified that he would be willing to construct a driveway permitting ingress and egress from Ridge Road, and, in fact, a permit from the Highway Department authorizing curb cut access, which would be necessary for a private driveway, was shown to members of the Board.

Appearing in opposition to the Browns' application for special exception were Mr. Theodore A. Cook, the owner of the property on Ridge Road immediately across from the subject property; Mr. Henry Scott, on whose property the Browns' eleven foot right of way is situated; Mrs. Margaret Fisher, a petitioner herein, the Browns' immediate abutting neighbor; Mrs. Marsha Hoernig, the owner of the "Top of the Hill Nursery", officially named "Young World, Incorporated"; and William E. Wiggin, Esq., the owner of the premises at 100 East Holly Oak Road, fronting on Ridge Road, and counsel to petitioners.

Mr. Cook testified that he "would be opposed to the granting of the variance". Mr. Scott testified that he would not consider enlarging the Browns' easement in order to permit more traffic. Mr. Wiggin stated that school buses pick up children on Ridge Road, directly opposite the Browns' property, every morning and thereby implied that the proposed private driveway would create a hazardous condition on Ridge Road.

Mrs. Fisher's testimony was quite lengthy. She stated that she teaches at the Holly Oak Day School, a half-day kindergarten school operated within a church. The school, according to Mrs. Fisher, is closed for the entire summer. She stated that the school does not provide the type of services contemplated by the Browns. Mrs. Fisher did testify, however, that, presently, three day care centers, including the Holly Oak School, were located in the immediate vicinity, and, among those, one was operated by a Mrs. McGeehan within her own home, located approximately one mile and a quarter from the Browns' residence. The third facility, located at the Top of the Hill Apartments, according to Mrs. Fisher, is housed in a gym which could accommodate twice as many children as are presently enrolled there. Mrs. Fisher further commented that, in her opinion, these vacancies can be attributed to economic reasons, i. e., mothers, in order to save money, attempting to secure free child care assistance from relatives. She stated that there were no small children in the immediate neighborhood and that all of the children cared for by Mrs. Brown would, therefore, come from other neighborhoods.

With regard to the potential detriment to the neighborhood resulting from the operation of a day care center on the Browns' property, Mrs. Fisher, who stated that she teaches and supervised the outside playtime activities of up to eleven children, testified that on previous occasions, during the summer, when she was not teaching, she was disturbed by eight or nine children playing on the Browns' property which is situated, at one point, only five and one-half feet from her home. In a letter written to the Board the day after the hearing, which letter is a part of the record before this Court, Mrs. Fisher elucidated her testimony by referring to the fact that children, allegedly under Mrs. Brown's care, repeatedly wandered onto her property and played thereon without supervision.

Mrs. Hoernig, whose interest in the matter was questioned by the Board insofar as she is not a resident of the neighborhood, testified that most of the day care centers in northern New Castle County are not operating at anywhere near capacity and, therefore, there is no need for the Browns' proposed center. She stated, when queried by a member of the Board on a possible reason for the sixteen applicants for Mrs. Brown's services, that "people are always willing to pay less". The rates at "Young World, Incorporated", Mrs. Hoernig stated, are $30.00 a week minimum. Mrs. Brown testified that she planned to charge

$85.00 per month, approximately $20.00 per week.

The Board, in its decision filed October 25, 1974, concluded that "the type center proposed by applicant will be a welcome addition to this general section of the County provided it is conducted in the manner in which the applicant indicated". The Board believed that Mrs. Brown satisfactorily demonstrated both a reasonable necessity for the convenience and welfare of the public and an absence of detriment or injury to the neighborhood. It did, however, impose three conditions upon the approval of the Browns' application; to-wit, the use of screen fencing and natural landscape screening to enclose the play area in order to minimize any inconvenience to the neighbors, the creation of vehicular access to the property via Ridge Road, and proper compliance with all State and County regulations for this type of use.

Petitioners herein seek a reversal of the Board's decision on the ground that substantial evidence in support thereof is not apparent on the record or, in the alternative, a new hearing, pursuant to 9 Del.C. § 1353(e).

■ It is a fundamental principle of law that on appeals from a Board of Adjustment, this Court's scope of review is limited to a determination of whether substantial evidence exists on the record to support the Board's findings of fact and conclusions of law. *Sullivan v. Marta,* Del. Supr., 256 A.2d 736 (1969); *Application of Beattie,* Del.Super., 180 A.2d 741 (1962); *Application of Julian,* Del.Super., 167 A.2d 21 (1960); *Mavrantonis v. Board of Adjustment,* Del.Super., 258 A.2d 908 (1969). It is immaterial whether this Court would have reached a contrary conclusion from the same evidence. See *Searles v. Darling,* Del.Super., 83 A.2d 96 (1951). The Court is not permitted to substitute its judgment for that of the Board members. *Kreshtool v. Delmarva Power and Light Co.,* Del. Super., 310 A.2d 649 (1973).

■ In light of the aforementioned limitations on the jurisdiction of this Court on appeals of this type, the decision of the Board must be affirmed. Substantial evidence does, in fact, exist on the record to support the granting of a special exception to Mrs. Brown to operate a day care center in her home.

On this record, it appears that only one day care center of the type contemplated by Mrs. Brown, i. e., in a home environment, exists in the section of the County wherein the Browns' home is situated. Mrs. Brown's testimony indicated that said facility, operated by Mrs. McGeehan, was inadequate and overcrowded. The fact that parents of sixteen children had made commitments to Mrs. Brown to utilize her services could lend credence to Mrs. Brown's observation on the McGeehan facility and demonstrate to the Board members a need for another center of this type. Evidence, albeit hearsay, was furnished, in writing, by the teacher to be employed by Mrs. Brown, with regard to the advantages of a day care center operated in a home environment. Indeed, this individual was present at the hearing and could have been interrogated on that subject. Moreover, the record discloses that Mrs. Brown intended to provide a service at a rate considerably less than that charged by the "Young World, Incorporated" center. In times of economic difficulty, a factor which, even in Mrs. Fisher's estimation, has an effect on the demand for paid child care, Mrs. Brown's operation could indeed be viewed by the Board as a "welcome addition" to that portion of the County and, thus, reasonably necessary for the public convenience or welfare.

■ Petitioners suggest that reasonable necessity has not been proven as other day care centers, with vacancies, are presently operating in the vicinity of the Brown's property and no children in the immediate neighborhood will make use of Mrs. Brown's facility. Petitioners interpretation of the term "reasonably neces-

sary", as it appears in § 23–85 of the New Castle County Code, is too rigid. "Reasonably necessary" means that which is practical or reasonably convenient and is to be distinguished from the more exacting degrees of necessity, "absolute" or "strict". See 36 Words and Phrases, p. 654; cf. *Jack v. Hunt,* 200 Or. 263, 264 P.2d 461 (1954); *Neuman v. City of Baltimore,* 251 Md. 92, 246 A.2d 583 (1968).

█ The existence of other centers notwithstanding, the Board could find Mrs. Brown's facility practical or reasonably convenient, particularly where it would provide an environment not available generally in other centers. Compare *Pomerantz v. Lehmann,* 55 Misc.2d 315, 285 N.Y.S.2d 188 (1967). Moreover, the requirement that a special exception be issued only where it is reasonably necessary for the convenience and welfare of the community contemplates the community at large, not just the immediate neighborhood. See Anderson, American Law of Zoning, § 15.12; *Preston v. Zoning Board of Review of City of Cranston,* 92 R.I. 463, 169 A.2d 908 (1961). Thus, it is immaterial whether children in the immediate neighborhood, for example, Ridge Road or Holly Oak Road, would benefit by Mrs. Brown's center.

Nothwithstanding the fact that petitioners' home is only five and one-half feet from the Browns' property, the Browns testified that the children's play area would be fenced in and located in the rear portion of their lot, approximately 150 feet away from the nearest home. The Board required that said area be enclosed in order to minimize inconvenience to neighbors. Under these conditions the Board could reasonably conclude that Mrs. Fisher, whose main objection apparently concerned children wandering onto her property, would not be inconvenienced by these children when they played outside. Moreover, even in Mrs. Fisher's estimation, the children would not play outside the entire day and, thus, the Board could conclude that Mrs. Fisher, who deals with young children in her profession, would not be greatly disturbed by the noise generated by children playing at least 150 feet away from her home only part of the day.

█ Mr. Brown testified that he would be willing to construct a private driveway permitting access from Ridge Road. The Board, therefore, in light of testimony that parents would, most likely, be dropping off children at different times, could conclude that an intermittent increase in traffic would not be detrimental to petitioners or the neighborhood in general, notwithstanding the fact that school buses stop at Ridge Road daily. A mere increase in traffic is not sufficient, standing alone, to justify the denial of a use of property otherwise lawful. See *Appeal of Community College of Delaware County,* Pa.Supr., 254 A.2d 641 (1969).

For the reasons herein discussed, the decision of the Board of Adjustment of New Castle County on the application of Donna Brown for a special exception to operate a day care center on her property should be affirmed.[1]

It is so ordered.

---

1. The Court declines to hear further evidence pursuant to 9 Del.C. § 1353(e). The hearing, held on October 10, 1974, although conducted in an informal fashion bordering on disorder at some points, provided the Board with sufficient testimony, both on behalf of the applicants and the objecting neighbors, from which it could determine whether the prerequisites to a special exception, pursuant to New Castle County Code, § 23–85, had been met. This testimony was supplemented by documentary evidence and letters submitted to the Board. Additional evidence, in this Court's estimation, would be unnecessary.

Petitioners' contention that a hearing is needed to resolve whether the Board was misled by Mrs. Brown's representation to the Board *vis-à-vis* the approval she allegedly received from the Division of Social Services, contingent upon the Board's approval, is unpersuasive. The Board Chairman, during the hearing, explicitly stated that the testimony concerning the approval of the Division of Social Services was irrelevant.